And let me see, is Mr. Pierce ready to proceed? Thank you, sir. May it please the Court, I'm Andrew Pierce. I'm representing the appellant, Jose Ramos. I came out here from California and appreciate being admitted to this court for this proceeding. Glad to have you. I'm going to argue two broad generic issues and then briefly comment on two other issues. The first broad generic issue relates to the third and fourth causes of action in this case, which are for racial and national origin discrimination under 42 U.S.C. section 1981 and Title VII. These claims were dismissed at the pleading stage, even though arguably they're stronger than the claims that went on in the case. The court's decision, of course, is to be reviewed based on what was in the pleadings, not what came out later in discovery. I would point out that we were never permitted the opportunity to take discovery on the racial motivations and thoughts of any of the participants in this case. And so we have to go strictly on what's in the complaint. All of the allegations of the complaint are to be taken as true, and, of course, all inferences to be drawn in Mr. Ramos's favor. And, of course, the evidence that came out later, I'll refer to it a little bit, but generally it's going to be irrelevant. The complaint alleges that after Mr. Ramos was hired at Molina Healthcare, Timothy Brewer was hired to become his supervisor. Mr. Ramos had worked with Mr. Brewer at Unisys when they both worked there before that unit at Unisys was acquired by Molina. The complaint alleges that Mr. Ramos was aware that Brewer disliked persons of Hispanic descent and that Brewer had told Ramos that he was working in Arizona because there were, to be quoted, too many damn Mexicans there. I'm sorry, he wasn't working in Arizona. As soon as Brewer took over, according to the complaint, he removed Mr. Ramos's team of 57 employees who reported to Mr. Ramos. It's alleged that Brewer took over in December of 2010 and the team was taken away immediately. The facts turned out to be a little more complicated than that, but not much more. The complaint further alleges that Brewer and Mr. Skeen, his predecessor, consistently have refused to approve the participation of qualified Hispanic candidates on a project in Maine that Mr. Ramos was working on. The Brewer and Skeen's hiring choices showed favoritism to young white Americans of southern extraction and East Indian subcontractors. I might add this is something we Californians see in Silicon Valley. Sometimes the engineers are all from one particular part of the world. The marketing people are from another part. There can be this sort of racial caste system. It's a little more complicated than the black-white issues that gave rise to some of these statutes. Skeen and Brewer are alleged to have refused to allow Ramos himself to hire qualified Hispanic employees or to transfer qualified Hispanic employees from other divisions of Molina. And finally, it alleges that minority architects and engineers were not promoted and received poor reviews from Brewer and Skeen. But isn't that relating to the reorganization of the company? Well, it relates to what we know about the state of mind of the two decision-makers, or of the decision. It turns out Mr. Brewer is probably the primary decision-maker. That's what it relates to. We're not complaining. I'm just trying to determine to what extent is it not consistent, the removal. If the removal was consistent, where is the discrimination? The removal of the other employees? Well, that issue was not developed in detail, of course, because there was no discovery on it. What the complaint alleges is that minority architects and engineers were not promoted and received poor reviews from Brewer and Skeen. There's no more to it than that. That's what it says. The context of that is not developed either by the defense or by the plaintiff. That's what's in the complaint. That's what was in front of Judge Lee when he granted the 12B motion. I know we're not supposed to look ahead at the evidence. I'm sorry. I want to talk briefly about what's alleged about the termination. What's alleged about the termination is there are no prior warnings, no job-related criticism, no performance improvement plan, and only positive feedback from Brewer and a commendation from the state of Maine. Now, we actually looked at Mr. Ramos' entire employment file, personnel file, before this case began. That's about this thick. Not one negative thing in there from Unisys or from Molina. And he had the same supervisors after the acquisition. The complaint further alleges that he was replaced by a younger Indian worker and he was not informed of any reason for his termination and alleges generally that he was terminated on the basis of race or national origin. Let me add, of course, he was not hired by Mr. Brewer. Mr. Brewer inherited him as an employee, took his team away almost immediately, terminated him within three months with no performance improvement plan or written criticism of any kind. The question is why was this not enough at the pleading stage to go forward on a race or national origin discrimination claim? What Molina says in its appellate brief is that Mr. Ramos, non-supervisor Ramos, was not qualified to express an opinion on the other employees' qualifications. Well, that's a nice argument at trial, I suppose. But here, first of all, it's alleged he was running a team of 57 people. He currently supervises about 10,000 people in the same field, but that's a subsequent fact. But in any event, he'd been running these large teams for three or four years and he'd gotten good reviews. So he was a supervisor and certainly he could have opinions about whether the Hispanic employees were being promoted or not. His opinions aren't necessarily going to be the evidence that wins the case, but at the pleading stage, is that plausible that he could see a pattern here? And of course it is. But were there any, did you make any allegations about any comments towards him, regardless of race? The only common allegation is the one about too many damn Mexicans, or too damn many Mexicans, which was not made directly about him. I mean, he happens to be Hispanic but not Mexican. And I would say if that were our only evidence, it is from the supervisor, so it's not a really stray remark. It is from the person who terminated him, so it's not a totally stray remark, but by itself would not be enough. But you combine it with these other facts, and that's, I think, what the trial court did not do, what Judge Lee did not do, and what Malina doesn't want us to do, which is to take all these facts together and say, is there a race and national origin discrimination claim here? I mean, you've given us facts that there may be these actions that people have expressed generally, but what do you have connecting that with your client as to any comments towards him? Well, again, the other facts are the failure to promote and allow him to hire qualified Hispanic employees, and that's alleged three or four different places in the complaint in different contexts. So, yes, if there had been, if he had been— Because of his race? Yes. Then you have something that connects that. I mean, you understand what I'm saying? Well, this is circumstantial. Not allowing him to promote is an action and other things, but what connects the race to that to him? Well, it was the perception of my client that Southern whites and Indians were being given all the jobs and that when he tried to bring in Hispanic employees, he was not allowed to by Skeen and by Brewer. And that's the perception? That's his perception. That's what he alleged in the complaint. You can't get there on perception alone? Well, we're talking about at the pleading stage. Those kinds of actions could have been maintained on perception alone. Perception is pretty strong, but you've got to have something to link it to. I realize that that would be direct evidence, but you've got to have something more than they're just bad people. They don't like Hispanics. They don't like people of my type. Well, again, we were not allowed to take discovery, look at personnel files, do statistical analysis because this claim was dismissed at the pleading stage. We're not talking about summary judgment here. If you see a pattern where no black person or no Hispanic person or no gay person is promoted and other people are, I think you're allowed to allege that, and then you can prove it or not prove it. That's what we're talking about here. The rule is going to be you can see a pattern and it doesn't matter. You have to prove it before you even start the case. That kind of hiding and pleading standard, I don't see any support in the case law for that. But the judge dismissed it without prejudice, and you didn't come back with anything. The complaint was not alleged further. That is true, Your Honor. I want to move on to my second argument, second generic point, which relates to the age discrimination claims, both retaliation and – Let me make sure I understand what you just said. Did you just say we just didn't do it? What I'm saying is we did not further amend the complaint. We stand on the complaint that – You just blew it aside. In other words, you didn't have anything else to add to it. At the time, no, Your Honor. So what's in the complaint is what we – Give me something that links these two things together, or at least an allegation that connects with some evidence. Well, there is an allegation that he was terminated on the basis of his race and national origin. But that's naked. There's no evidence. Again, Your Honor, pleading stage. That's all I can say. What's in the complaint is in the complaint. They're ultimate facts. They could have been proven. I suppose they could not have been proven. But the case was thrown out at the pleading stage. That's really what our argument is. With regard to the second issue – You have some stronger issues than that in this case. All right. Well, I'll get to that. I would think. Thank you, Your Honor. Thank you for the guidance. I was going to move on. I'm running out of time also. Under the ADEA, there's a wrongful termination claim based on age, straight up, and also on retaliation. The termination was allegedly based on two incidents. We believe there are disputed issues of fact that preclude summary judgment being granted on both incidents. On the first incident, Mr. Brewer says, Mr. Ramos said, I will not attend some important meetings. I will not come to work. And you can see how important I am when I do that. And if you don't like it, you can lay me off. Mr. Ramos says flatly, I didn't say that. Conflict in the evidence. To complicate the matter, Brewer writes an email giving his side of the conversation, but only sends it to April Krajewski. I know I'm not pronouncing that correctly. But only sends it to April in the HR department. He does not send an email confirming the conversation or criticizing my client for the conversation. In fact, he sends a different email to my client saying he greatly appreciates his work only a week later. And when I asked him what he meant by that at his deposition, he said, I was positive, I was happy with him at that moment, a week after this first incident is alleged to have occurred. What is the protected activity? The protected activity was in complaining. That's on the retaliation claim only, of course. Which, to me, is what you ought to be arguing. All right. Well, let me jump ahead then. The protected activity was going to Ms. Krajewski and complaining that he was being told to fire Eric Friedrichs. And Eric Friedrichs was an older employee. He ended up not being fired, by the way. Is there any evidence that Brewer knew about this conversation? Yes. Let me skip ahead in my notes. Oh, I'm sorry. Yes. Brewer, on Joint Appendix 617, I'm glad you asked, and 1121, there's a deposition testimony from Mr. Ramos and a declaration from him saying that Brewer, again, the man who terminated him, told him directly that his team was taken away in December for failing to terminate Eric Friedrichs, the older employee. That's different, isn't it, from whether Brewer knew of the conversation. Because you're saying the protected activity, I take it, is him going to have the discussion with April Krajewski, right? That's correct. And that Skeen had told Brewer that he had went against his specific direction. In other words, Brewer had asked Skeen for input on the evaluation of Mr. Ramos, which actually never took place, because they terminated him before they bothered to review him. And in an email, Mr. Skeen said, he went against my specific direction. And when I asked Mr. Skeen at his deposition what he meant by that, the main incident he cited was failing to terminate Friedrichs. And again, my client had gone to April Krajewski and had said, I think this is age discrimination. She said, slow it down, be careful about this, etc. And he ended up not being terminated. I think Judge Lee found there was protected activity there in raising these concerns about the age discrimination. Of course, he had seen age discrimination in some prior situations and had participated in a termination, regrettably, that he thought was also based on age discrimination. This is a company with a lot of older employees from Unisys that are being pushed out in favor of younger employees, many of them East Indian. And that's what the pattern is going on here. And that's what Mr. Ramos had perceived. I'll briefly mention the California law question. Again, decided at the pleading stage. There's no question the employer was California-based. The letter terminating him came from California. The person who made the decision, Brewer's supervisor, was in California. The severance agreement cites California law. And it's alleged he was a resident of California. If we go beyond what's in the pleadings and look at the declarations, we see he lived in California, had a house there, lived there at various points while he worked for the company, had a California driver's license, voted in California. He didn't allege he worked in California. We allege he worked out of his home, Your Honor. He didn't allege the supervisor worked in California. His supervisor worked in Arizona, not Virginia. He didn't allege discriminatory activities took place in California. He was terminated in California. That's where the letter came from. The letter came from. Yes, the letter from the supervisor of his supervisor. Long Beach is where the company is based. And the letter was the discriminatory activity? Well, without a decision made in Long Beach, there would be no case here, Your Honor. I'm out of time. If the Court has any other questions. Otherwise, I have five minutes reserved. Thank you. I'd like to hear from Mr. Michaels now. Good morning, Your Honor. May it please the Court, John Michaels for the defendants, police, Molina Health Care, and Molina Medical, MMS. May it please the Court. There's a little bit of a grab bag of issues here based on the kind of circuitous route that this came to Judge Lee and Alexandria. Let me address, well, first of all, let me ask if the Court has any specific questions for me, and then I'll move on to address counsel's arguments. I think they're ordered in the order that we ended up devoting most of our work on the case, which was focusing in on the 12B6 issues and then the discrimination issues. With respect to the 12B6 determination by the Court, this Court has talked about what it takes to get past the 12B6 motion to dismiss, and it talks about allegations being sufficient or sufficient enough to raise the inquiry above the speculative level, nudging the claims across the line from conceivable to plausible. And really what you've got here with this complaint is a jumble of allegations that are all over the place, but there's no connective tissue. The Court is being asked to fill in or the reader is being asked to fill in the gaps between these various jumbled allegations, and this is especially true with respect to the national origin and race discrimination claims. First of all, with respect to the national origin claims, Mr. Ramos indicates that he's Puerto Rican. There's no indication of bias against Puerto Ricans anywhere in the record. None. It's not in the complaint. It's not anywhere else. With respect to the race claims, there are basically two allegations with respect to race, two sentences out of this complaint with respect to the race claims and having to do with Hispanics. One is Mr. Brewer's stray remark made at least nine to ten months before the termination. We don't have a date on any of this. That's another issue that is problematic for the Court, is that the complaint assembles a collection of things, some of which that happened at Molina, some of which happened at Unisys, some of which happened when one person was a supervisor, some when another, and doesn't assemble them into a coherent pattern or a coherent picture, which is what we tried to do with our memorandum. But the stray remark by Mr. Brewer occurs at least nine to ten months before anything happens. It occurs when they are working at a different company. It occurs when Mr. Brewer is basically a coworker of Mr. Ramos. And it's not related to anything else with respect to their interaction. It doesn't relate to the workplace. It doesn't relate to the makeup of the workplace or assignments or anything else. It's just out there. That's the first one. The second issue is this discussion, and the way it's alleged in the complaint is interesting. Let's back up just for a minute, Mr. Michaels. That statement, I assume you're not embracing that statement in any respect by saying that it's not relevant. But it would become relevant if there were other actions. Absolutely. Absolutely. You would certainly agree on that. Yes, ma'am. Even if you were talking about so-called Mexicans in general. Correct. Yes, Judge Keene, I certainly would. But that's the problem. It just sits out there. It's out there in its own little bubble. There's nothing connecting it further to any further actions. It's not related to a workplace issue. It's not related to a workplace setting. It has no context. And that's also true of the second allegation with respect to failure to bring on, and I'm going to just quote the language out of the complaint in paragraph 12, refused to approve the participation of qualified Hispanic, Taiwanese, and Chinese-American candidates in Molina's project in Maine. That's alleged against both Mr. Brewer and Mr. Skeen. Again, it's not clear when or why. With respect to Mr. Brewer, anyway, the preceding sentence in the complaint indicates that what was actually happening in this company at the time was that they were outsourcing most of their project work. And they were outsourcing it to a company called Infosys, which is made up of predominantly Indian employees. And so the idea that, again, no context for this bald, naked, to use Judge Wynn's comment, comment to the effect that they weren't promoting these people or allowing these people to participate, that's probably no surprise given the fact they were outsourcing everything. So what does that mean? With respect to qualified, who was qualified? How? Where? There's no indication of the positions these people were going into. There was just the naked assertion that these folks weren't qualified under some standard. No indication that Mr. Ramos was even in a position to evaluate or recommend these folks. You could add that one sentence simply said, because of these racist attitudes and discriminatory conduct, Ramos was terminated. Would that have been sufficient to survive Covid-6? I don't think so. And I'll quote. It's not in there, so to speak. That statement is not in there. If it had done that, would that have been sufficient? By itself, no. But if there had been some context for the remark or this. Context being that there had been a pattern of discrimination against Hispanics and they moved people from here. There's this general attitude as part of the company. And because of that, this racist attitude, Ramos was terminated. Would it be allowed at least to conduct discovery? It would be closer, but I would still think that it would not survive a 12B6 because, as this court said, naked assertions of wrongdoing necessitate some type of factual enhancement within the complaint to cross the line between possibility and plausibility. But do you really have to defend that if it wasn't put in there? That's what I'm going at. I mean, you've taken on a higher burden than you probably need. You anticipate the next case. You say, well, maybe, but it's not there. That's not even it. Correct. It's not there. I think it would make it a closer case, but it's not there. I think Judge Lee got it right when he kicked this one out on the race and national origin. There simply isn't a sufficient context for the court to say, yeah, this is more than mere speculation. It's not plausible what was alleged, and that's one of the things that jumps out of the language in the complaint. Let me address briefly, since the court focused in on the retaliation issue, let me just briefly address the retaliation claim. Before we go there, just on the age discrimination, is there evidence that Brewer knew about this discrimination complaint? There's none. Part of the reason for that, and this is one of the reasons we argued the district court did not find, and I'm drawing a very specific line with respect to what is the protected activity. The protected activity that I think is clear in the record, although that Judge Lee keyed in on, and he told me to stop arguing about it at the summary judgment argument, in fact, was the idea that Mr. Ramos had come in and said, I'm not comfortable with what's happening. I'm being asked to terminate some employees. They're older. I think age is a factor. How do I deal with this? And there's no evidence that Mr. Brewer was aware of that complaint, and that's a clear protected activity right there. There's no indication in the record, even from Mr. Ramos' testimony, that Mr. Brewer knew why Mr. Skeen was irritated with Mr. Ramos other than he wouldn't fire this one guy. And that's it. It wasn't anything further than that. It wasn't that you didn't fire this one guy because you complained about age discrimination. It was a straight assessment in the record, the allegation that Mr. Brewer said to Mr. Ramos, I'm removing your team from you because you would not follow Tim Skeen's directives to terminate somebody. And that's it. As far as Mr. Brewer knows, as far as the record shows, the evidence is that Mr. Skeen told Mr. Brewer, Mr. Ramos wouldn't terminate this guy. He won't follow my instructions. You need to take action on it. Now, I will note that Mr. Brewer, of course, denies that conversation ever took place, but it's in the record. It's also, of course, completely inconsistent with the record regarding the team removal. That conversation supposedly took place at the end of December between Mr. Ramos and Mr. Brewer, and I'm taking your team away, et cetera. In fact, on October 22nd, Mr. Ramos sends an email to a senior Molina official with whom he was acquainted saying, I'm going to lose my team. Mr. Brewer's going to be reorganizing. I'm almost certainly going to lose my team. Maybe not a bad thing, but I need to start looking around for something to do. So the idea that this is some kind of sudden drop foisted on him is belied by the record. Notwithstanding that, the clearest evidence of what is alleged to be protected activity, and we argue that it doesn't reach that level, but assuming it does, is this conversation with Ms. Krajewski between Mr. Ramos and Ms. Krajewski. There's no indication Mr. Brewer knew about that. Ms. Krajewski did not advise him of it. She close held it because Mr. Ramos wasn't making a complaint. He wasn't coming to her to complain. He said, I was coming to just express a concern and how I should deal with it. So there's no indication Brewer has any knowledge of this. In fact, if you look at the age claim here, and probably the closest or toughest nut around this issue from a perspective that I would think the court would be looking at, is the issue of material fact and whether we've got a dispute with regard to the termination of Mr. Ramos. And so I want to address the point that counsel raised with regard to this sequence of termination. Mr. Brewer removes Mr. Ramos' team before the end of 2010 as part of a reorganization. He does it for everybody. He chops teams up, slices, dices, and sets his reorganization. He restructures the company or the group that he's managing. He then takes Mr. Ramos and handpicks him for a significant assignment called the 4.8 assignment, which is the synchronization of health insurance and health benefit care for two states, getting about five different kinds of servers to talk to each other. It was extremely complicated. And he says, here, run this. I need you to run this. I need you to put it together. You're going to have to use this Infosys group. They bring that forward, and they start moving forward. Mr. Ramos allegedly has this conversation with him, with Mr. Brewer, on January 28, in which he tells him, as counsel reflected, I'm not going to play with you. I'm not getting the respect I deserve. I feel that I'm not being given enough autonomy. I'm not being given enough management responsibility to put my team together. I'm going to not come to work next week, and you can see how you'll get along without me. Mr. Ramos alleges this conversation never occurred. Mr. Brewer immediately fires off an e-mail to April Krajewski, and counsel did get her name right, April Krajewski, saying, I don't know what to do here. I've got this problem. What do I do? How do you recommend I deal with it? They converse. They actually talk back and forth by e-mail. Mr. Brewer ultimately decides he'll see what happens. He's not going to put him on a performance improvement plan. The next week, Mr. Ramos shows up, and Mr. Brewer sends him the message that counsel referenced, and it's in the brief, but it's a very straightforward message that deals with or demonstrates basically what Mr. Brewer said. And that message, and I can't find the exact quote, but the message says, basically, you're doing a good job, especially in light of the concerns you expressed and the conversation we had last week, and I look forward to basically moving forward with you. So the concerns that the panel might have with respect to the nature of this disputed conversation, I think are assuaged greatly by the fact that it's clear that Mr. Brewer believed the conversation happened. He took action with respect to it. He references it later. And Mr. Ramos, in his own brief, admits that human resources and Mr. Brewer have been chatting for the last month. So that's one. And then the second issue, that's not the trigger issue, though. That conversation with Mr. Ramos is not the trigger issue. The trigger issue occurs at the end of February, and that, I think, is well described in the brief in terms of sequence of events, what happens, what Mr. Brewer believes. At the end of the day, there is no issue of material fact, however, with regard to why Mr. Ramos was terminated because of these beliefs by Mr. Brewer. But didn't the judge view the evidence and the like most favorable to your client as opposed to Ramos at that point? I don't think he did. I think the judge looked at the evidence and said, okay, the decision maker has this picture of events in his head as to what happened. There is no other indication of age animus. I mean, Judge Wynette asked about the but-for test earlier. There's no indication that but for some age animus, which there's no record of Mr. Brewer ever expressing, other than that evidence of age animus, this guy would still be there. There's no indication of that at all. It is a clear, undisputed picture from Mr. Brewer as to these events happened, I reacted to them accordingly, I did it in good faith. There's no challenge to that. And if I may, I may be saying too much here, but Judge Wynne raised an issue that I've been grappling with ever since I first read the Gross Opinion, which is how do you test for but-for on a summary judgment kind of case. The way that I look at it, and the way that I think we have to for purposes of summary judgment, is that the court has to look at whether the plaintiff, the employee, raises issues of material fact sufficient with regard to the reasons for the adverse actions. And you have to evaluate the reasons for the adverse actions in the context of what the employer is doing. In other words, the employer puts out reasons for termination, whatever they are. Reasons for the adverse action, whatever they are. The but-for cause then has to raise, there has to be an issue of material fact raised with regard to those issues. And those issues become important in the context of how the employer has viewed or expresses its view about those very reasons. It is a highly fact-specific inquiry, but I think that's the only way that the court can make a review on summary judgment. With respect to the retaliation claim, as I indicated, there's no measure between, and linkage, between what Ms. Krajewski reports as protected activity, which I'll assume is protected activity, and what Mr. Brewer ultimately does. There's no linkage there. Again, much like the 12B6 concerns, we have a jumble of this thing happened and this thing happened and this thing happened, but there's no connective tissue between them that points to age or race or national origin. And under these circumstances, I think that summary judgment, first 12B6 dismissal was appropriate. Summary judgment was appropriate on the age of retaliation claims under that but-for standard. I'll briefly address, I've got about three minutes, I'll briefly address the California issues. What was the protected activity? The protected activity was Mr. Ramos going into Ms. Krajewski at some time before he moves over to Mr. Brewer. This may have even actually occurred when they were at Unisys, but going into Ms. Krajewski and saying, I'm concerned about these two employees that Mr. Skeen, Tim Skeen, is targeting for removal. I believe he's doing it because they're older. I have concerns about these older employees. Now, as an aside, that falls apart in the later facts because it's clear that Mr. Skeen is working with a number of older people, but regardless, these two people, he raises this concern. And he says in his deposition, I'm not really complaining about it. It was just a concern. I was trying to get some information from her about how to act. She hears that, does not think it's anything other than Mr. Ramos' maybe perception. She does not run it up the human resources food chain or personnel food chain. She doesn't flag it to Mr. Brewer. She doesn't even flag it to Mr. Skeen. But that was the protected activity. We argue that it doesn't rise to the level of protected activity in the brief, but assuming that it is, that's a picture. There's a clear age-related complaint there or age-related issue there. The protected activity with regard to Mr. Brewer doesn't hold up because there's no indication, even by Mr. Ramos' account of what happened, that Mr. Brewer knew anything other than the fact that Mr. Ramos was not following Mr. Skeen's instructions. Let me briefly discuss the California issue. I'm almost out of time. The problem with this case and the way it got moved is that it got transferred under a 28 U.S.C. 1404 motion, which allowed all this other evidence to come in in terms of these affidavits, and then it gets to Alexandria, and the court then is now working on a 12B6 with all this other information in place. Our position is that the California claims were properly kicked out simply because there is no nexus in California. And as to the issue of whether the affidavits were- The letter written in California? The termination notice to him? Yes, it was written in California. Molina's headquartered there. He says that's the activity? The termination decision was made by Mr. Brewer in Arizona or on the road somewhere, while Mr. Ramos was living, working, living, breathing, sleeping, everything else in Virginia. So you say the decision was not made in California, all that was sent was just a letter? Correct. Correct. The decision was made by Mr. Brewer, and the rest of it was just a conduit going up. And my time is up. Thank you. Thank you, sir. Mr. Pierce? I know there are a lot of issues in this case. I want to return to the central one. I didn't quite get to all my points on it, and I know the court wants to hear about it as well. The two incidents that led to my client's termination were both fabricated. They were both fabricated. The first incident, Mr. Ramos says, I did not say the things I was alleged to have said, and the email follows up that conversation. It makes no reference to him saying anything about quitting, not wanting to work, or anything. It says, I appreciate your work. And again, when I asked Mr. Brewer what he meant by that, he said, I was happy with him at that point in time, only a month before he was terminated. Yes, there's stuff in the file. The stuff in the file was sent to April Krajewski without being sent to Ramos. Ramos was never put on a performance improvement plan. Now, why do you do that? You do that because you want to get rid of somebody, you want to create a paper record, but you don't want to confront him with it because he will rebut it. That's what happened here. Ms. Krajewski said, put him on a plan if you've got this problem, and they omitted or forgot or something, never put him on a plan, a performance improvement plan, or even to confront him with any of this. On the second incident where he supposedly berated Tammy Lynn on a conference call, of course Mr. Ramos denies doing that. Hence, we submitted a declaration from Rob Goldberg, who was also on the call, saying Ramos did not berate anyone. If anything, the other employees were beating up on him. We then have the report in the file made by Tammy Lynn. There are a couple of interesting things about that. The first thing is she says her supervisors are the ones who asked her to make the report. Secondly, she says she didn't want to bring a complaint. Thirdly, the date of the memo, which I believe is March 1st, is several days after Mr. Brewer has already said in an email that he's ready to move on the Ramos termination. That leads to the second disputed issue. The first is what was said wasn't really so bad. The second is did Brewer even know about the Tammy Lynn incident at the time he decided to terminate Mr. Ramos? Again, his email saying he was ready to move is dated several days prior to that. With regard to some of the other issues, and certainly the fact that somebody would gin up a record without confronting my client at any point in a company that has a lot of policies and procedures about progressive discipline is suggestive of pretext. This is a classic case of pretext in that regard. I do think we all agree that's the weakest point of Melina's presentation. In terms of some of the other issues that were brought up, when the team was taken away from him, even if we say it was taken away earlier, that just means that Brewer moved even more quickly to strip Ramos of all authority. There's no evidence in the record that any other individual's team was taken away from him. And yet Ramos is given this massive project with no direct reports and no staff whatsoever. That's an indication that he's on the outs from the get-go with Mr. Brewer, the man who made the anti-Hispanic comments and who had the pattern of not hiring the Hispanic employees and engineers. Well, assuming we agree with the reasons for the termination were fabricated, is it enough for your client to prevail, or does he need to show additional evidence of age discrimination? Well, that's the interesting question that comes up after Reeves versus Sanderson Plumbing Products. If you rebut the proffered reasons in Stage 3 or Stage 4 of the McDonnell-Touglas test, do you then have to do more? To my mind, the interesting legal question is, if the employer never proffers a reason, never says, here's why we're terminating you, then all you have to do is show you were in the group, you were replaced by somebody not in the group, you were performing satisfactorily, you get the inference. Now they raise a reason. They say, oh, you said some things we didn't like, you berated somebody. It turns out those things aren't true or they're disputed issues of fact, hotly disputed issues of fact. Do we then have an additional burden just because they raised a false charge against my client? Logic says no. The Reeves case does not say that. It says, in a typical case, if you can rebut pretext, then you are home free. I believe this court, the only cases we've seen were King versus Rumsfeld, but there was unrebutted evidence of poor performance. And I think if we accept that the reasons were fabricated, you have to ask yourself, why were they fabricated? Why did he go to all this trouble? Why did he not put him on a performance improvement plan? Why did he do all these things? Well, if he doesn't like his specs or if he doesn't like older employees, that would be the reason. I'm out of time. I had a few other things I wanted to say, but I appreciate being able to argue here today. Okay, thank you very much, Mr. Pierce. We'll ask the clerk to adjourn.
judges: Barbara Milano Keenan, James A. Wynn Jr., Henry F. Floyd